[No. D037229. Fourth Dist., Div. One. June 5, 2002.]

GAFCON, INC., Plaintiff and Appellant, v.
PONSOR & ASSOCIATES et al., Defendants and Respondents.

**COUNSEL**

Eppsteiner & Associates, Stuart M. Eppsteiner and Neal A. Markowitz for Plaintiff and Appellant.

Wingert, Grebing, Brubaker & Ryan, Charles R. Grebing and Brian P. Worthington for Defendants and Respondents Ponsor & Associates and Roger von Kaesborg.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Meryl L. Young, Nicola T. Hanna and Deborah L. Shirley for Defendant and Respondent Travelers Property Casualty Corporation.

## OPINION

**O'ROURKE, J.**—Gafcon, Inc. (Gafcon) sued its liability insurer Travelers Property Casualty Corporation (Travelers), Travelers' in-house law firm Ponsor & Associates, and Ponsor lawyer Roger von Kaesborg (collectively Ponsor) seeking, among other relief, a judicial declaration that (1) Travelers' use of employee attorneys to defend its insureds constitutes the unauthorized practice of law; (2) insurance companies in general improperly exercise control over their employee attorneys so as to interfere with their independence and professional judgment in representing insureds; (3) Travelers in the present case operated under a conflict requiring it to pay for independent *Cumis*[1] counsel; and (4) insurance companies derive an illegal profit from use of in-house counsel in representing insureds. Travelers and Ponsor moved for summary judgment; the court granted the motions.

On appeal, Gafcon asks us to broadly decide as a matter of law that insurance companies engage in the unauthorized practice of law when they use employee attorneys to defend their insureds. Gafcon additionally challenges the court's summary judgment ruling on grounds that (1) disputed issues of fact exist as to whether Ponsor illegally split fees with Travelers and operated under a conflict of interest in representing Gafcon in the underlying negligent construction litigation; and (2) Travelers did not address Gafcon's unfair business practices cause of action in its motion. Gafcon finally contends the court erred in refusing to grant its requests for additional discovery in the case.

With respect to Ponsor, we conclude it demonstrated the absence of a present and actual controversy appropriate for declaratory relief, and therefore the court correctly granted summary judgment in its favor. With respect to Travelers, we conclude under the undisputed facts of this case, Travelers' use of Ponsor to represent Gafcon did not amount to the practice of law. In reaching this conclusion, we necessarily hold an insurance company does not

---

[1]*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (*Cumis*).

engage in the practice of law due to the mere employment relationship between the insurer and the attorneys defending its insured against third party claims. Our holding is in part based on the recognition that in these instances, and absent conflicts of interest giving rise to independent counsel, the attorney represents both insurer and insured. We also conclude Gafcon failed to raise disputed issues of fact preventing summary adjudication of its request for declaratory relief as to Ponsor's fee splitting and as to its cause of action for unfair competition. Because Travelers failed to meet its threshold summary judgment burden to establish the absence of a conflict of interest arising from Ponsor's defense of the underlying lawsuit, however, the court could not properly deny declaratory relief as to that cause of action. Accordingly, we affirm the judgment as to Ponsor, but reverse the judgment as to Travelers with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Collection/Negligent Construction Litigation*

In 1995, the Palm Desert Resorter Homeowners Association (the Association) retained Gafcon, a construction management firm, to manage reconstruction work at the Palm Desert Resorter planned community. After a dispute arose over fees, Gafcon retained Stuart M. Eppsteiner and his then law firm Gibbs & Eppsteiner and sued the Association for unpaid fees. The Association cross-complained against Gafcon alleging, among others, causes of action for negligent supervision and advice; breach of contract and express and implied warranties; strict liability; and nuisance.[2]

Gafcon tendered the Association's action to its general liability insurer, Travelers, which accepted the defense but reserved its rights to allocate any payment of judgments or settlement between covered and noncovered claims and seek reimbursement for such payments and expenses. In particular Travelers pointed out its insurance did not apply to claims falling within an endorsement entitled "Exclusion—Testing or Consulting Errors and Omissions." That provision excluded from coverage any claim for bodily injury, property damage, personal injury, or advertising injury arising out of "[a]ny error, omission, defect or deficiency in any test performed, or evaluation, a

---

[2]In part, the Association's cross-complaint alleged: "Pursuant to the Agreement [for construction management services between Gafcon and the Association], Gafcon was to act as a 'team leader' to coordinate and manage the construction project; obtain firm cost estimates for repairs; provide expert advice regarding selection of contractors and regarding methods of repair; provide an on-site inspection to ensure correct, defect-free, and timely completion of the repair, and act as liaison between the individual homeowners, the Association and contractors and other construction personnel regarding all aspects of work at the Project, particularly with respect to inspections, testing, repairs and homeowner relocation."

consultation [*sic*] or advice given by or on behalf of any insured" or "[t]he reporting of or reliance upon any such test, evaluation, consultation or advice." Travelers assigned one of its staff counsel, Ponsor & Associates, to represent Gafcon.

In May 1999, Ponsor lawyer von Kaesborg met with Eppsteiner about the litigation. Among other things, Eppsteiner advised von Kaesborg that he felt Ponsor operated under a conflict of interest in representing both Travelers and Gafcon. In response to these assertions, von Kaesborg advised both Eppsteiner and Gafcon principal Yehudi Gaffen that while his law firm was a unit of Travelers Indemnity Company's staff counsel organization and its lawyers were Travelers employees, it was not retained to represent Travelers or its interests but was retained solely to represent Gafcon. Von Kaesborg advised Gaffen and Eppsteiner that Ponsor & Associates would not put Travelers' interests above Gafcon's and was not involved in making coverage determinations.

Several months later, von Kaesborg learned Ponsor & Associates had a potential conflict of interest representing Gafcon in the Association lawsuit.[3] A technical specialist with Travelers called Eppsteiner and left several messages offering to retain his firm at Travelers' standard hourly rate. When Eppsteiner failed to respond to those messages, von Kaesborg advised Gaffen of the potential conflict and notified it he had arranged for one of Travelers' outside panel counsel, Selski, Sturgeon and Wehbe, to represent Gafcon in the Association's case. Although Ponsor thereafter sought to withdraw from the matter with Gaffen's permission, Gaffen never responded to Ponsor's request that it execute a substitution form.

*The Present Litigation*

In October 1999, less than a month after Ponsor advised Gaffen it had a conflict of interest requiring its withdrawal, Gafcon served Travelers and Ponsor with the complaint in the present action. Approximately a month later, Ponsor obtained a court order relieving it as Gafcon's counsel of record.

---

[3]In connection with Travelers' motion, von Kaesborg averred the conflict of interest arose from his firm's representation of a "potentially adverse party in a separate, unrelated action." Citing to Eppsteiner's declaration in its responding separate statement, Gafcon disputed this assertion on the ground von Kaesborg's declaration did not reveal the nature of the potential conflict and stated it was therefore a "matter[] of opinion, not facts." We disagree that von Kaesborg's declaration did not sufficiently describe the nature of the conflict by failing to give details such as the name of the client in the unrelated action. In any event, Gafcon's argument does not set forth admissible evidence to raise a dispute as to this issue.

In spite of Travelers' retention of outside counsel to represent Gafcon's interests, Gafcon proceeded with its action. In April 2000, it filed its second amended complaint naming Travelers, Ponsor and several other insurers, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, unfair business practices under Business and Professions Code section 17200, as well as declaratory relief. In addition to damages, injunctive relief and restitution, Gafcon sought three judicial declarations applicable to both Ponsor and Travelers: (1) the practice of insurance companies, and specifically Travelers, in hiring staff counsel to represent their insureds, constitutes the unauthorized practice of law, and that when staff counsel represent the insured they are aiding insurance companies in the unauthorized practice of law; (2) Gafcon had the right to independent counsel of its own choosing to defend the Association's cross-complaint; and (3) "insurance companies derive an illegal profit off the representation of the insured through staff counsel." As to Travelers and the other insurers, Gafcon sought a fourth declaration: that it "had the right to independent counsel who charges for attorney fees at the rate at which the market would dictate, for counsel retained in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended, were it not for insurance companies engaging in the unauthorized practice of law."

Both Ponsor and Travelers moved for summary judgment and alternatively summary adjudication. Travelers argued the trial court could summarily dispose of Gafcon's causes of action under a 1987 ethics opinion of the California State Bar's Standing Committee on Professional Responsibility and Conduct (State Bar Formal Opn. 1987-91, 1987 WL 109707, hereinafter State Bar Opinion No. 1987-91). This opinion concluded the employment of attorneys by insurance companies did not constitute the unauthorized practice of law. In addition, Travelers relied upon evidence that Ponsor never advised Travelers on the scope of insurance coverage, split fees with Travelers, or engaged in any unlawful, misleading or unfair business practice or deceptive advertising. Ponsor advanced the same arguments, but further maintained it was entitled to summary judgment because Gafcon had not sought any "direct relief or damages" against it.

In its motion, Travelers sought an adjudication that Gafcon's declaratory relief causes of action had no merit in part because, as a matter of law, it did not "aid and abet in the unauthorized practice of law when it retained attorneys it employed to represent Gafcon in the [underlying] litigation."[4] It submitted the declarations of von Kaesborg and its senior technical specialist

---

[4]Travelers' separate statement identified entirely different issues for adjudication: that Travelers' declaratory relief causes of action were without merit because "(1) the declarations

handling the case, Todd Lightbody. After setting forth the circumstances of his retention by Travelers, the fact of his employment with the company, and his later withdrawal from the underlying litigation, von Kaesborg averred generally that Ponsor "was not retained to represent Travelers" and at no time did he or the law firm place Travelers' interests over Gafcon's. According to von Kaesborg, he exercised his own professional judgment on Gafcon's behalf at all times, and "Travelers never interfered with that judgment" nor did Travelers "in any manner limit or restrict our ability to represent Gafcon in the underlying litigation." Finally von Kaesborg averred that while he was aware Travelers provided a defense under a reservation of rights, Ponsor & Associates had no responsibility for the coverage determination made by Travelers; that Ponsor & Associates "was not retained by Travelers, nor did [it] represent or advise Travelers, with respect to the scope of coverage for Gafcon, and [it] was not involved with any factual or legal investigation regarding the reservation of rights." Lightbody similarly averred that Ponsor & Associates and its attorneys, including von Kaesborg, never had any responsibility regarding Travelers' coverage determination. He stated Ponsor & Associates was never retained by Travelers regarding scope of coverage, and none of its lawyers were involved with any "factual or legal investigation regarding Travelers' reservation of rights." He averred, "Ponsor & Associates was retained for the sole purpose of representing Gafcon's rights in the [underlying] litigation."

Following the hearing on Ponsor's motion, the parties stipulated to continue the hearing on Travelers' motion in order to permit Gafcon time to conduct certain discovery and bring motions to compel discovery from Travelers before filing its opposition papers. Thereafter, in opposition to Travelers' motion, Gafcon submitted its counsel's declaration indicating Gafcon could not present certain evidence tending to establish facts relevant to the issues raised in its second amended complaint because the court had denied its various motions to compel.

The court granted summary judgment in favor of Travelers and Ponsor. Citing *Cumis, supra,* 162 Cal.App.3d 358, and *Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345 [2 Cal.Rptr.2d 884] (*Blanchard*), it ruled as a matter of law the employment of attorneys by insurance companies does not constitute the unauthorized practice of law. The court also ruled Gafcon failed to raise material issues of fact to show Travelers or Ponsor engaged in or aided the unauthorized practice of law or had a conflict

plaintiff seeks are not a proper subject of declaratory relief, and (2) the declarations plaintiff seeks have no bearing on the legal rights and duties of plaintiff and Travelers toward one another." Gafcon did not point out this discrepancy to the trial court and does not before us. We do not address the effect of its inconsistent positions.

of interest requiring the appointment of *Cumis.* counsel under Civil Code section 2860. It entered judgment in Travelers and Ponsor's favor. Gafcon appealed.

DISCUSSION

### I. *Standard of Review*

■ A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*), citing Code Civ. Proc.,[5] § 437c, subd. (o)(2).) A defendant may, but need not conclusively negate an element of the plaintiff's cause of action; rather, "[a]ll that the defendant need do is to 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar*, at p. 853, citing § 437c, subd. (o)(2).) In meeting its burden, the defendant must present evidence, in the form of affidavits, declarations, admissions, answers to interrogatories, depositions or matters of which judicial notice must be taken. (*Aguilar*, at p. 855; § 437c, subd. (b).) In addition to presenting evidence that negates an element of plaintiff's cause of action, "[t]he defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar*, at p. 855, fn. omitted.)

■ Once a defendant has met its burden of showing that a cause of action has no merit, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar, supra*, 25 Cal.4th at p. 849.) The plaintiff may not rely upon the mere allegations or denials of its pleading to show a triable issue of material facts exists but instead shall set forth the specific facts showing that a triable issue of material fact exists. (§ 437c, subds. (c), (o)(2); *Aguilar, supra*, at p. 849; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70]; *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].)

■ Summary judgment procedure includes declaratory relief actions " 'in a proper case.' " (*National Exhibition Co. v. City and County of San Francisco* (1972) 24 Cal.App.3d 1, 11 [100 Cal.Rptr. 757], citing *Walker v. Munro* (1960) 178 Cal.App.2d 67, 70 [2 Cal.Rptr. 737].) " ' "[T]he propriety

---

[5]Statutory references are to the Code of Civil Procedure unless otherwise specified.

of the application of [summary judgment to] declaratory relief lies in the trial court's function to render such a judgment when only legal issues are presented for its determination." ' [Citations.]" (*Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court* (1995) 38 Cal.App.4th 1002, 1015-1016 [45 Cal.Rptr.2d 529].) When summary judgment is appropriate, the court should decree only that plaintiffs are not entitled to the declarations in their favor. (*Spencer v. Hibernia Bank* (1960) 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867], citing *Essick v. City of Los Angeles* (1950) 34 Cal.2d 614, 624-625 [213 P.2d 492].) Thus, in a declaratory relief action, the defendant's burden is to establish the plaintiff is not entitled to a declaration in its favor. It may do this by establishing (1) the sought-after declaration is legally incorrect; (2) undisputed facts do not support the premise for the sought-after declaration; or (3) the issue is otherwise not one that is appropriate for declaratory relief.

■ This court assesses the trial court's ruling de novo, applying the same analysis as the superior court. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 60, 65 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) We construe the moving party's affidavits strictly and the opponent's affidavits liberally and resolve any doubts as to the propriety of granting the motion in favor of the opponent. (*Silva v. Lucky Stores, Inc.*, at p. 261.) On appeal from a ruling on a motion for summary judgment we are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 873 [60 Cal.Rptr.2d 830]; *El Centro Grain Co. v. Bank of Italy etc.* (1932) 123 Cal.App. 564, 567 [11 P.2d 650].)

## II. *Ponsor's Motion*

■ We first conclude the court correctly granted summary judgment in favor of Ponsor given the lack of an actual, present controversy between it and Gafcon for which declaratory relief might have been appropriate. There is no dispute that as of November 1999, well before Gafcon filed its second amended complaint, Ponsor had been relieved as counsel and no longer represented Gafcon. Any relationship between Ponsor and Gafcon, and thus any controversy vis-à-vis those parties, had terminated by that time.

■■■ Gafcon's second amended complaint sought only declaratory relief against Ponsor.[6] ■■ The controversy that is the subject of declaratory relief " ' " " 'must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts . . . .' " ' " (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1355 [104 Cal.Rptr.2d 183].) "The judgment must decree, not suggest, what the parties may or may not do. [Citations.]" (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [109 Cal.Rptr. 799, 514 P.2d 111].) Moreover, declaratory relief " 'operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 [92 Cal.Rptr. 179, 479 P.2d 379], quoting *Travers v. Louden* (1967) 254 Cal.App.2d 926, 931 [62 Cal.Rptr. 654].)

■■ " 'The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. . . . A controversy is "ripe" when it has reached, *but has not passed*, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722 [45 Cal.Rptr.2d 752], quoting *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618], italics added.) Even where a particular matter is an

---

[6] As Ponsor pointed out in its summary judgment motion, it was named as a defendant only in Gafcon's first, second and third causes of action for declaratory relief. In its opposition, Gafcon asked the court to liberally construe the allegations of its second amended complaint as also including Ponsor as a defendant in its sixth cause of action for injunctive relief (despite its being expressly labeled as against only the insurer defendants), and sought leave to amend in the event the court felt its pleading did not adequately apprise Ponsor of the claims asserted against it. Even if we were to construe that cause of action as against Ponsor, it would not change our conclusion here. Ordinarily, injunctive relief is available to prevent threatened injury and is not a remedy designed to right completed wrongs. (*Gold v. Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 372 [122 Cal.Rptr. 732], limited on other grounds in *Youst v. Longo* (1987) 43 Cal.3d 64, 74 [233 Cal.Rptr. 294, 729 P.2d 728, 85 A.L.R.4th 1025]; *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 [85 Cal.Rptr.2d 86].) "It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future. Indeed, a change in circumstances at the time of the hearing, rendering injunctive relief moot or unnecessary, justifies denial of the request." (*Scripps Health v. Marin*, at p. 332.) Unless there is a showing that the challenged action is being continued or repeated, an injunction should be denied. (*Id.* at p. 333; see also *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132-133 [41 Cal.Rptr. 468, 396 P.2d 924].) Whether the issue presented by Gafcon's complaint will ever arise again vis-à-vis Gafcon and Ponsor is highly speculative. Under these circumstances, the court should not intervene to exercise its injunctive powers.

inherently proper subject of declaratory relief, " ' " " 'a declaratory judgment may not be rendered in respect to [such a matter] in disregard of the customary limitations upon the granting of such relief.' " ' " (*Bame v. City of Del Mar, supra,* 86 Cal.App.4th at p. 1355, quoting *Redwood Coast Watersheds Alliance v. State Bd. of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 968 [83 Cal.Rptr.2d 24].)

■ Gafcon's declaratory relief claims were premised on its theory that Travelers' use of in-house counsel constituted the practice of law by Travelers; that given the conflict created by Travelers' use of Ponsor, Gafcon was entitled to independent counsel; and that Ponsor and Travelers engaged in improper fee splitting. As to Ponsor, Gafcon's concern was that Ponsor would place Travelers' interests over its own and operate under impaired judgment. Yet Ponsor's actions could negatively impact Gafcon only so long as it acted on Gafcon's behalf in the Association's action. As for Gafcon's request for independent counsel and reimbursement for its having to retain independent counsel, that controversy is between Gafcon and its insurer Travelers. When Ponsor was relieved as Gafcon's counsel, any harm occurring to Gafcon resulting from Ponsor's purported inadequate representation or assistance to Travelers ended. Because declaratory relief operates prospectively only, rather than to redress past wrongs, Gafcon's remedy as against Ponsor lies in pursuit of a fully matured cause of action for money, if any exists at all. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1593, fn. 5 [26 Cal.Rptr.2d 762].)

## III. *Travelers' Motion*

■ Our conclusion regarding the lack of an actual controversy appropriate for declaratory relief does not extend to the causes of action between Gafcon and Travelers. Their insurer/insured relationship did not end upon Ponsor's withdrawal from the action, nor would it necessarily expire upon the conclusion of the underlying lawsuit. Moreover, declaratory relief is appropriate where "questions of public interest . . . are involved." (*Collier v. Lindley* (1928) 203 Cal. 641, 645 [266 P. 526]; accord, *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) The use of in-house or staff counsel by insurance companies to represent insureds has become more commonplace in recent years,[7] and necessarily raises the issue whether the mere fact of such an employment relationship between counsel and insurer gives rise to

---

[7]See Mallen, *Defense by Salaried Counsel: A Bane or a Blessing?* (1994) 61 Def.Couns.J. 518; and generally *General Dynamics v. Superior Court* (1994) 7 Cal.4th 1164, 1171 & fn. 2 [32 Cal.Rptr.2d 1, 876 P.2d 487].) Mallen notes, " 'Salaried counsel' also are called 'staff counsel,' 'in-house counsel' or 'house counsel,' which are synonymous terms commonly used

the unauthorized practice of law by the insurer. We exercise our discretion to consider it here.

## A. *Practice of Law by Travelers*

 Gafcon advances the broad proposition that insurance companies that employ lawyers to defend their insureds against third party claims engage in the unauthorized practice of law. It argues generally that absent qualification as a certified law corporation (Bus. & Prof. Code, § 6127.5), such a practice is barred by Business and Professions Code section 6125.[8] In fact, its contention rests on the separate but related notion that a "lay" corporation cannot practice law or any other profession implicating duties of loyalty and confidentiality. In support of this contention, Gafcon cites *People v. Merchants Protective Corp.* (1922) 189 Cal. 531 [209 P. 363] (*Merchants Protective*), a 1922 California Supreme Court opinion, and subsequent cases that hold a corporation may not "employ competent attorneys to practice for it." (*People v. California Protective Corp.* (1926) 76 Cal.App. 354 [244 P. 1089] (*California Protective*).) Under these authorities, Gafcon essentially seeks a per se prohibition against staff counsel acting on an insured's behalf, on the theory they are agents of the insurance company and it is in effect the unlicensed insurance company that indirectly renders the services, not the licensed attorneys.

---

in the insurance industry and the legal profession. . . ." (61 Def.Couns.J. at p. 518, fn. 1.) As Ponsor does, groups of attorneys also practice under the name of one or more of their members but are still paid employees of an insurance company. That arrangement is sometimes labeled a "captive" law firm. (See *Stone v. Stakes* (Ind.Ct.App. 2001) 749 N.E.2d 1277.) We refer to salaried employee attorneys as both in-house and staff counsel.

[8]Gafcon cites only one recent authority for its unauthorized-practice argument in which the court stated "an unregistered corporation may not avoid the statutory requirements for the professional practice simply by hiring licensed professionals." (*Cappiello, Hofmann & Katz v. Boyle* (Mar. 16, 2001) A089477, opn. ordered nonpub. July 11, 2001.) The case has been depublished. And Gafcon's general references to Business and Professions Code section 6125 do not advance its position. "The California Legislature enacted [Business and Professions Code] section 6125 in 1927 as part of the State Bar Act (the Act), a comprehensive scheme regulating the practice of law in the state. [Citation.] Since the Act's passage, the general rule has been that, although persons may represent themselves and their own interests regardless of State Bar membership, no one but an active member of the State Bar may practice law for another person in California. [Citation.] The prohibition against unauthorized law practice is within the state's police power and is designed to ensure that those performing legal services do so competently. [Citation.]" (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127 [70 Cal.Rptr.2d 304, 949 P.2d 1].) As indicated, the rationale behind this doctrine is to protect the public from incompetent or unskilled nonlawyers. Gafcon does not claim that any lawyer acting on its behalf was not licensed to practice law in California. Moreover, as we explain *post*, it has not shown any Travelers nonattorney employee sought to control Gafcon's defense of the Association's action in any way. Under the facts before us, the unauthorized-practice doctrine does not come into play.

In response, Travelers concedes a corporation may not employ lawyers for customers where the corporation has no direct interest in the dispute at issue. It maintains its practice of employing lawyers to protect its own as well as its insureds' interests is distinguishable and has gained acceptance as evidenced by State Bar Opinion 1987-91, which expressly concludes an insurance company's in-house counsel may represent insureds in litigation without violating the prohibition against aiding the unauthorized practice of law, provided, among other things, the insurance company does not interfere with counsel's professional independence or have in-house counsel also advise it on coverage issues concerning the insured. Travelers argues further that the undisputed facts demonstrate it did not engage in any conduct falling within any of the proscribed activities under State Bar Opinion 1987-91.

We reject the notion that an insurance company's mere employment of attorneys to represent its insureds constituted the practice of law by the insurance company itself. Gafcon's analysis ignores a critical element of the equation: the relationship between insurer, insured and counsel retained or employed by the insurer to act on the insureds' behalf. When an insurance company in California arranges for a law firm to defend an insured under a contractual duty to do so under an insurance policy (regardless of whether that law firm is retained outside counsel or in-house counsel employed by the insurer), counsel is acting on the insurer's behalf and representing the insurer's own rights and interests as well as those of its insured. It is because of this distinction that we reach our limited holding in this case.

1. *The Tripartite Insurer-Attorney-Insured Relationship*

In California, it is settled that absent a conflict of interest, an attorney retained by an insurance company to defend its insured under the insurer's contractual obligation to do so represents and owes a fiduciary duty to both the insurer and insured. (*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422, 1428-1429 [86 Cal.Rptr.2d 20]; *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1727 [1 Cal.Rptr.2d 570] ["So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured."]; *Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 146 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) "It is a well accepted and oft repeated principle that the attorney retained by the insurance company for the purpose of defending the insured under the insurance policy owes the same duties to the insured as if the insured had hired the attorney him or herself." (*Bogard v. Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 609 [210 Cal.Rptr. 578]; see also *Kroll & Tract v. Paris & Paris* (1999) 72 Cal.App.4th 1537,

1542-1543 [86 Cal.Rptr.2d 78]; *Lysick v. Walcom, supra,* 258 Cal.App.2d at pp. 146-147.)

In *American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 591-592 [113 Cal.Rptr. 561], the court elaborated on the interests of the parties within this relationship: "In the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured. The insured and the insurer have certain obligations each to the other . . . arising from the insurance contract. Both the insured and the carrier have a common interest in defeating or settling the third party's claim. If the matter reaches litigation, the attorney appears of record for the insured and at all times represents him in terms measured by the extent of his employment. [¶] In such a situation, the attorney has two clients whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation. Conceptually, each member of the trio, attorney, client-insured, and client-insurer has corresponding rights and obligations founded largely on contract, and as to the attorney, by the Rules of Professional Conduct as well. The three parties may be viewed as a loose partnership, coalition or alliance directed toward a common goal, sharing a common purpose which lasts during the pendency of the claim or litigation against the insured. Communications are routinely exchanged between them relating to the joint and common purpose—the successful defense and resolution of the claim. Insured, carrier, and attorney, together form an entity—the defense team—arising from the obligations to defend and to cooperate, imposed by contract and professional duty. This entity may be conceived as comprising a unitary whole with intramural relationships and reciprocal obligations and duties each to the other quite separate and apart from the extramural relations with third parties or with the world at large. Together, the team occupies one side of the litigating arena."

In certain circumstances (discussed more fully in pt. III.C, *post*) a conflict of interest between insurer and insured will trigger the insured's right to retain independent counsel at the insurer's expense. (Civ. Code, § 2860, subd. (b).) But until such a conflict arises, the insurer has the right to control defense and settlement of the third party action against its insured, and is generally a direct participant in the litigation. (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, fn. 3 [111 Cal.Rptr.2d 181]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 15:1086, p. 15-191 (rev. #1 2001).)

2. *Corporate Practice Doctrine in the Context of Law Practice*

The corporate practice prohibition generally seeks to discourage any layperson or entity's interference in a profession requiring the utmost

duties of loyalty and confidentiality to the client. In the context of the parallel doctrine of corporate practice of medicine, this court noted the " 'principal evils' " thought to spring from the doctrine are " 'the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer.' " (*Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1041, fn. 2 [55 Cal.Rptr.2d 901], quoting *People v. Pacific Health Corp.* (1938) 12 Cal.2d 156, 158, 160 [82 P.2d 429, 119 A.L.R. 1284]; *Steinsmith v. Medical Board* (2000) 85 Cal.App.4th 458, 466 [102 Cal.Rptr.2d 115] [the basic rationale of the corporate practice prohibition is the potential for a secondary and divided loyalty to the patient].)

In furtherance of this policy and under the rationale that the practice of law is not a commercial business, in 1922, the California Supreme Court held corporations can neither practice law nor hire lawyers to practice law for it. (*Merchants Protective, supra,* 189 Cal. 531.) *Merchants Protective* was followed by other decisions repeating those concerns and reaching similar conclusions. (See *California Protective, supra,* 76 Cal.App. at p. 360 [a corporation providing legal services to its patrons for a fee constitutes the unauthorized practice of law; "[a] corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it"]; see also *Parker v. Board of Dental Examiners* (1932) 216 Cal. 285, 298 [14 P.2d 67] ["That a corporation may not engage in the practice of the law, medicine, or dentistry is a settled question in this state. None of those professions which involves a relationship of a personal as well as a professional character, which has to do with personal privacy, can be placed in the same category as druggists, architects, or other vocations where no such relationship exists."]; *People v. Pacific Health Corp., supra,* 12 Cal.2d at p. 158 ["It is an established doctrine that a corporation may not engage in the practice of such professions as law, medicine or dentistry."]; *Pacific Employers Ins. Co. v. Carpenter* (1935) 10 Cal.App.2d 592, 595 [52 P.2d 992].)

As Travelers points out, the early cases involving the corporate practice of law dealt with circumstances where the corporate entity was created for the sole purpose of retaining counsel for its customers. In *Merchants Protective,* a quo warranto proceeding, the state challenged the practices of a corporate entity known as the Lawyers' Institute of San Diego as constituting the practice of law. The corporation was specifically formed for the purpose of having individuals, other firms and corporations pay a set price for the services of a central organization that would appoint attorneys to handle collections and " 'render such other professional services as is needed and required by the various members and subscribers thereto.' " (*Merchants Protective, supra,* 189 Cal. at p. 532.) The court held the corporation, which

employed attorneys as its agents and representatives to dispense legal advice and counsel, was indeed engaged in the practice of law. (*Id.* at p. 538.) Adopting the reasoning of the Washington Supreme Court in *State ex rel. Lundin v. Merchants Protective Corp.* (1919) 105 Wash. 12 [177 P. 694], it held: " 'The practice of law is not a business that is open to a commercial corporation. "Since, as has been seen, the practice of the law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the court, and as these conditions cannot be performed by a corporation it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate." ' " (*Merchants Protective,* 189 Cal. at p. 538.)

In *California Protective,* another quo warranto proceeding, the entity was incorporated for the purpose of " 'collect[ing] debts due to its members or clients. . . . employ[ing] attorneys for its said members or clients, and . . . pay[ing] for such legal services for and on behalf of its said members or clients.' " (*California Protective, supra,* 76 Cal.App. at p. 358.) Its clientele paid yearly fees for the services of lawyers to, among other things, give " '[l]egal advice and consultation on all business, personal and private matters at the attorney's office.' " (*Id.* at p. 359.) The court followed *Merchants Protective* and concluded the corporation was unquestionably engaged in the unlawful practice of law. (*Id.* at p. 360.) It reasoned: "It is true that individuals who are duly licensed members of the bar may 'lawfully' associate themselves in any unincorporated form of association, such as a partnership, for the practice of law. But such individuals may not associate themselves for the practice of law under the aegis of a corporation. Though all the directors and officers of the corporation be duly licensed members of the legal profession, the practice of law by the corporation would be illegal nevertheless. At any time those directors and officers, by death or by the transfer of their shares, might be succeeded by laymen none of whom possessed the right to practice law." (*Id.* at pp. 360-361.)

Several premises underlie the corporate practice doctrine. One is that the corporation will always exercise impermissible control over the employee-attorney's judgment and thus improperly interfere with his or her independence of judgment and loyalty to the client. Another is that the employee-attorney will necessarily be influenced by his or her employer and allow his or her judgment or independent decisionmaking to be impaired.[9] The concern is that an attorney-employee will not be able to abide by his or her

---

[9]As one commentator puts it: "Four questionable assumptions support this rationale for prohibiting the corporate practice of law when an attorney renders the legal service. First is

duties to remain loyal to his client and avoid conflicts of interest, protect client confidences and maintain independence of judgment. Such duties are of paramount importance in the practice of law. (*In re Jordan* (1974) 12 Cal.3d 575, 580 [116 Cal.Rptr. 371, 526 P.2d 523].) In *Anderson v. Eaton* (1930) 211 Cal. 113 [293 P. 788], the California Supreme Court laid down the framework of an attorney's duties of confidentiality and loyalty in a case involving an attorney's concurrent representation of a plaintiff in a wrongful death action on behalf of their son's estate and of the insurance company representing the son's employer in worker's compensation proceedings: "One of the principal obligations which bind an attorney is that of fidelity, the maintaining inviolate the confidence reposed in him by those who employ him, and at every peril to himself to preserve the secrets of his client. [Citation.] This obligation is a very high and stringent one. It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the . . . knowledge of all the facts and circumstances. [Citation.] By virtue of this rule, an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed, not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." (*Id.* at p. 116; see also *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 288-289 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

These basic and paramount obligations of an attorney to his or her client have not changed since our high court decided *Merchants Protective* and *California Protective*. And they are reflected in various statutes, as well as the State Bar Rules of Professional Conduct. (*In re Jordan* (1972) 7 Cal.3d 930, 940-941 [103 Cal.Rptr. 849, 500 P.2d 873]; Bus. & Prof. Code, § 6068, subd. (e) [every attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"].) But other changes have taken place in the practice of law since these cases were decided. It is simply no longer true that lawyers may not practice in a corporate framework. (See Bus. & Prof. Code, §§ 6160, 6161,

the assumption that attorney-employees are not independent or capable of independence. Second is the assumption that outside attorneys are independent. Third is the assumption that outside attorneys are not profit-motivated. Fourth is the assumption that profit motive by definition subverts ethical behavior." (Giesel, *Corporations Practicing Law Through Lawyers: Why the Unauthorized Practice of Law Doctrine Should Not Apply* (2000) 65 Mo. L.Rev. 151, 178.)

6161.1.) Not-for-profit corporate entities provide legal services to third parties, and, therefore, under the reasoning of *Merchants Protective*, practice law. (See Corp. Code, § 10830.)[10] Corporations employ in-house lawyers to defend their interests in and outside of court. Gafcon does not challenge the general proposition that a corporation may represent its own interests in court through counsel who is practicing law in a representative capacity. (See *Woodruff v. McDonald's Restaurants* (1977) 75 Cal.App.3d 655, 657-658 [142 Cal.Rptr. 367] ["The record reflects that defendant, McDonald's Restaurants, is a corporation. As such, it had no authority to appear in the superior court except through a licensed attorney."]; see also *Merco Construction Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 730 [147 Cal.Rptr. 631, 581 P.2d 636] ["A corporation cannot in fact appear in court except through an agent." (italics omitted)].) In *Estate of Miller* (1936) 5 Cal.2d 588 [55 P.2d 491], the California Supreme Court held the rendering of legal services by a county counsel to a public administrator in his official capacity did not constitute practice of law by a corporation, nor did it violate provisions of the State Bar Act. (*Id.* at p. 595.) The court reasoned that the county counsel is performing an official duty for the benefit of a county officer and is not representing a private individual or carrying on a private law practice for the benefit of the county. (*Ibid.*) "The county is no more practicing law in this case than when the County Counsel represents the county or a school district in court . . . . The County Counsel . . . of course, practice[s] law . . . but it is they who are practicing law, not the county." (*Id.* at pp. 595-596.) Further, the court pointed out that the county has a material financial interest in estates handled by the public administrator. It concluded: "The prohibition against a corporation practicing law does not preclude a corporation from employing attorneys in any litigation in which it has a financial interest." (*Id.* at p. 597.)

None of these evolutions permit lawyers representing corporate entities or performing legal services for third parties to violate or disregard

[10]Corporations Code section 10830 provides: "A nonprofit corporation may be formed under Part 3 (commencing with Section 7110) of this division for the purposes of administering a system or systems of defraying the cost of professional services of attorneys, but any such corporation may not engage directly or indirectly in the performance of the corporate purposes or objects unless all of the following requirements are met: [¶] (a) The attorneys furnishing professional services pursuant to such system or systems are acting in compliance with the Rules of Professional Conduct of the State Bar of California concerning such system or systems. [¶] (b) Membership in the corporation and an opportunity to render professional services upon a uniform basis are available to all active members of the State Bar. [¶] (c) Voting by proxy and cumulative voting are prohibited. [¶] (d) A certificate is issued to the corporation by the State Bar of California, finding compliance with the requirements of subdivisions (a), (b) and (c). [¶] Any such corporation shall be subject to supervision by the State Bar of California and shall also be subject to Part 3 (commencing with Section 7110) of this division except as to matters specifically otherwise provided for in this article."

obligations otherwise imposed by the Rules of Professional Conduct. (E.g., Corp. Code, § 10830 [corporation may not perform corporate purposes unless the attorneys furnishing professional services are acting in compliance with the Rules of Professional Conduct].) All lawyers, whether employed by a corporation or by an independent law firm that is retained by a corporate entity, are bound by the same fiduciary and ethical duties to their clients. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094 [95 Cal.Rptr.2d 198, 997 P.2d 511], citing *General Dynamics Corp. v. Superior Court, supra*, 7 Cal.4th at p. 1190 [32 Cal.Rptr.2d 1, 876 P.2d 487].) "Both [in-house and private counsel] are qualified to provide, and do provide, equivalent legal services." (*PLCM Group, Inc. v. Drexler,* at p. 1094.) And all must comply with the Rules of Professional Conduct, including in those instances where counsel undertakes dual representation of the insurer and insured. For example, rule 1-600 of the Rules of Professional Conduct expressly addresses the concern arising from a nongovernmental entity that furnishes or pays for legal services, prohibiting any licensed attorney from belonging to any organization that interferes with his or her independent professional judgment. (Rules Prof. Conduct, rule 1-600 ["A member shall not participate in a nongovernmental program, activity, or organization furnishing, recommending, or paying for legal services, which allows any third person or organization to interfere with the member's independence of professional judgment, or with the client-lawyer relationship, or allows unlicensed persons to practice law, or allows any third person or organization to receive directly or indirectly any part of the consideration paid to the member except as permitted by these rules, or otherwise violates the State Bar Act or these rules"].) It is true, the "discussion" section of rule 1-600 provides: "Rule 1-600 is not intended to override any contractual agreement or relationship between insurers and insureds regarding the provision of legal services." (Discussion, 23 pt. 3 West's Ann. Codes, Rules (1996 ed.) foll. rule 1-600, p. 340.) But we disagree with Travelers' assertion that insurers and insureds are entirely exempted from this rule's proscriptions. The clarification in the discussion section cannot be read to permit—in the context of an insurer/insured relationship—an unlicensed adjuster to practice law or the insurer to interfere with an attorney's independence of professional judgment. (Discussion, 23 pt. 3 West's Ann. Codes, Rules, *supra*, foll. rule 1-600, p. 340.)

Because the general ban on the corporate practice of law reflected in *Merchants Protective* and *California Protective* is subject to these exceptions, it is evident that the "chinks in the armor" of the corporate practice doctrine that this court found in the context of medical practice (*Conrad v. Medical Board of California, supra*, 48 Cal.App.4th at p. 1044) now extend to the legal profession. The California State Bar Standing Committee on

Professional Responsibility and Conduct recognized this in 1987 when it issued its opinion noting the *Merchants Protective* and *California Protective* decisions had not "outlasted the evolution of prepaid medical and legal service programs which, under these authorities, would theoretically violate the prohibition against corporations practicing law." (State Bar Opinion No. 1987-91, *supra*, 1987 WL 109707, *2.) The Committee summed up its opinion as follows: "In-house counsel for an insurer may represent insureds in litigation without violating the prohibition against aiding the unauthorized practice of law set forth in rule 3-101(A). However, the attorneys must be certain that the insurance company does not control or interfere with the exercise of professional judgment in representing insureds, that any fees are not split with the insurance company or any other third parties, that case[s] involving conflicts of interest are referred to outside counsel, and that the firm name used by in-house counsel is not false, deceptive or misleading." (State Bar Opinion No. 1987-91, *supra*, 1987 WL 109707, *1.) More specifically, the committee found an insurance company's use of salaried employee attorneys working within a "law division" to represent insureds does not violate the corporate practice doctrine as long as attorneys within the law division (1) do not permit the division to "become a front or subterfuge for lay adjustors or other unlicensed personnel to practice law"; (2) adequately supervise nonattorney personnel working under the attorneys' supervision; (3) function as a separate law firm as much as possible; (4) take steps to guarantee that illegal fee splitting with the insurer does not occur; (5) cease representing the insured or insurer in the event of a conflict of interest absent their mutual consent; (6) never represent insureds while simultaneously advising the insurer on coverage aspects of the representation; or (7) use a law firm name without indicating the relationship between the firm and the law division on its letterhead. (State Bar Opinion No. 1987-91, *supra*, 1987 WL 109707, **4, 5, 6.)[11]

[11]As observed more recently by the Indiana Supreme Court, numerous other states and state bar ethics bodies have reached similar conclusions, albeit "through a variety of paths." (*Cincinnati Ins. Co. v. Wills* (Ind. 1999) 717 N.E.2d 151, 155, fns. 4, 5, citing Ala. Ethics Opn. No. 81-533; Ariz. Ethics Opn. No. 75-4 (1975); Cal. State Bar Opn. No. 1987-91; Colo. Bar Assn., Formal Ethics Opn. No. 91 (1993); Ill. State Bar Assn., Advisory Opn. on Prof. Conduct, Opn. No. 89-17 (1990); Mich. Ethics Opn. No. CI-1146 (1986); N. J. Supreme Ct. Com. on Unauthorized Practice, Opn. No. 23 (1984); N.Y. State Bar Assn., Prof. Ethics Com. Opn. No. 109 (1969); Tex. Ethics Opn. No. 167 (1958); Va. State Bar, Legal Ethics Opn. No. 598 (1985); *In re Rules Governing the Conduct of Attorneys in Fla.* (Fla. 1969) 220 So.2d 6; *Petition of Youngblood* (Tenn. 1995) 895 S.W.2d 322; *Kittay v. Allstate* (1979) 78 Ill.App.3d 335 [33 Ill.Dec. 867, 397 N.E.2d 200, 202]; *Strother v. Ohio Casualty Ins. Co.* (1939) 14 Ohio Opns. No. 139; *King v. Guiliani* (Conn. July 27, 1993, CV9202903705) 1993 WL 284462 [nonpub. opn.]; *Coscia v. Cunningham* (1983) 250 Ga. 521 [299 S.E.2d 880]; *In re Allstate Ins. Co.* (Mo. 1987) 722 S.W.2d 947 (en banc); *Joplin v. Denver-Chicago Trucking Co.* (8th Cir. 1964) 329 F.2d 396; *United Services Automobile Ass'n v. Zeller* (Tex.Civ.App. 1939) 135 S.W.2d 161; *Utilities Ins. v. Montgomery* (1940) 134 Tex. 640 [138 S.W.2d 1062].) The

We are not bound by an ethics opinion, and we need not adopt it in full for our holding in this case. It is sufficient here to recognize that (1) an insurance company has a direct pecuniary interest in the underlying third party action against its insured and (2) having such an interest, it is entitled to have counsel represent its own interests as well as those of its insured, as long as their interests are aligned. In the present situation, the insurer is representing its own interests through licensed attorneys who also happen to be its employees. Counsel's status as a salaried employee of the insurer does not inherently create a temptation to violate or disregard ethical rules.[12] We reject the argument that such a relationship supports the presumption that in-house counsel will always favor the insurer's interests. Conflicts of interests may arise in such circumstances, but the same is true for an outside law firm that might be dependent upon a particular insurance company for a substantial amount of business.

---

Indiana high court pointed out that eight of 10 state courts addressing the issue and one federal circuit have concluded it is permissible for an attorney employed by an insurance company to represent the company's insureds, and two states (*American Ins. Ass'n v. Kentucky Bar Ass'n* (Ky. 1996) 917 S.W.2d 568; *Gardner v. N. C. State Bar* (1986) 316 N.C. 285 [341 S.E.2d 517]) have disapproved of the arrangement, one focusing on the potential conflict of interest between the insurer and the insured and the second on a statutory bar against the practice of law by a corporation. In *Gardner*, for example, the court held that the acts of the employed attorneys were in fact the acts of Nationwide Insurance Company and therefore in violation of its statutory prohibition against the practice of law by a corporation as contained in General Statutes of North Carolina sections 84-2.1 and 84-5 (1985). Those statutes defined the practice of law as " 'performing any legal service for any other person, firm or corporation, with or without compensation. . . .' " and stated " '[i]t shall be unlawful for any corporation to practice law or appear as an attorney for any person in any court in this State. . . .' " (*Gardner, supra,* 341 S.E.2d at p. 520.) The court noted that these statutes differed from those of other states defining the unauthorized practice of law and held: "[W]e believe that our duty is to interpret our own state's law according to the policies expressed by our legislature and the best interest of our state. In the first instance, and absent constitutional restraint, questions as to public policy are for legislative determination. [Citations.] We agree with respondent bar and amicus North Carolina Bar Association that North Carolina has a strong policy favoring personal representation, a policy not necessarily endorsed by other states." (*Id.* at p. 522.) It is not particularly useful to examine the non-California authorities in detail given the limited nature of the question before us and the varying grounds for each state's decision. (See, e.g., *Kittay v. Allstate, supra,* 397 N.E. 2d at p. 337 [Illinois statute prohibiting corporations from practicing law contained an express exception for corporations employing attorneys in litigation in which the corporation may be interested by reason of the issuance of any policy of insurance].)

[12]In *PLCM Group, Inc. v. Drexler*, involving the question of whether in-house counsel are entitled to recover Civil Code section 1717 fees, the court rejected an argument that corporations should be encouraged to use independent outside counsel to review their "legal situations." It said: "We disagree that in-house lawyers are inherently biased advisors to their corporate employers; on the contrary, to the extent they share management's business orientation, it would appear that in-house counsel have every incentive to analyze legal issues objectively and professionally and to conduct litigation in a cost-effective manner." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1093, fn. 1.)

### 3. *The Record Demonstrates That Travelers Did Not Engage in the Practice of Law*

Notwithstanding the breadth of the judicial declaration sought by Gafcon, the question presented is a narrow one, confined to the record before us. We decline to render an advisory opinion purporting to extend to all circumstances in which an insurance company utilizes employee attorneys to represent its insured in third party actions. Instead, we assess only whether the trial court could properly determine based upon undisputed facts that Travelers was not engaged in the practice of law due to Ponsor's brief representation of Gafcon in this case.

Travelers' evidence (the declarations of von Kaesborg and Lightbody) demonstrated that the only involvement or decisionmaking Travelers had with respect to Ponsor's defense of the Association's action was to designate that law firm as Gafcon's counsel. Travelers did not influence or interfere with von Kaesborg's professional judgment. It did not "limit or restrict" von Kaesborg's ability to represent Gafcon in the underlying litigation or that of any other Ponsor & Associates lawyer. Von Kaesborg did not participate in any investigation or determination with regard to Travelers' insurance coverage. There is no evidence Travelers directed or controlled Ponsor's representation in any way. These undisputed facts lead us to conclude that Travelers met its burden to show Gafcon was not entitled to a judicial declaration that Travelers impermissibly engaged in the practice of law. The undisputed evidence demonstrates nothing more than Ponsor's employment relationship and the agency status created by that relationship.

Gafcon sought to dispute von Kaesborg's claim he was free to exercise his professional judgment by pointing to the fact he prepared a declaration that Travelers submitted "in opposition to Gafcon's complaint" before he filed a declaration on his own behalf. Gafcon surmised in its separate statement that his declaration had to have been "required" by Travelers, and "thus" interfered with his professional judgment. Gafcon further argued that additional discovery would show Ponsor was required to follow "restrictions on the practice of law similar to those insisted upon by Travelers with respect to panel counsel." Gafcon points to no evidence in support of these argumentative and vague assertions other than Travelers' panel counsel manual and "Construction Defect Expert Retention and Billing Guidelines," which, by Gafcon's own concession, apply only to Travelers' panel counsel. These documents are insufficient to create a dispute as to whether Travelers in some manner controlled Ponsor's professional judgment.

### B. *Fee Splitting*

Gafcon's third cause of action sought a judicial declaration that insurance companies profit directly and indirectly by using staff counsel to represent

its insureds, and that Rules of Professional Conduct, rule 1-600 prohibited "the type of financial arrangement that exists between insurance companies and their staff counsel." Gafcon contends Travelers' practice of charging other insurance companies for the services of its staff counsel violates rules 1-600 and 1-320(A) of the Rules of Professional Conduct, which, respectively, prohibit attorneys from participating in any organization that "allows any third person or organization to receive directly or indirectly any part of the consideration paid to the member except as permitted by these rules . . ." or "directly or indirectly shar[ing] legal fees" with a person who is not a lawyer.

 We note preliminarily that Gafcon points out the trial court failed to address its claim regarding fee splitting. Interpreting this assertion as an argument that the judgment must be reversed for the trial court's failure to address Gafcon's request for declaratory relief on this point, we reject it. Because our review is de novo, the only question before us is whether the record establishes Gafcon's entitlement to the declaration sought. (See *Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627-1628 [13 Cal.Rptr.2d 755]; cf., e.g., *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 178 [48 Cal.Rptr.2d 197]; *Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782 [31 Cal.Rptr.2d 162].)

 Reaching the merits, we conclude Gafcon has not met its burden to raise a triable issue of material fact as to its claim Ponsor and Travelers illegally split fees through Travelers' sharing of its costs with other insurers. In support of its motion, Travelers presented von Kaesborg's declaration, in which he averred that "at no time" did he or his law firm split fees with Travelers. In opposition to this evidence, Gafcon pointed to deposition testimony by Dennis Ponsor in which he generally discussed instances where other carriers share in Travelers' litigation expenses. Dennis Ponsor stated that in such cases, his law firm sends a bill to those other carriers who make out a check payable to Travelers and give it to Ponsor, which then records the information and forwards the bill to Travelers' claims department. Gafcon also referred to a declaration from James DiVirgilio, Travelers' deputy general counsel, in which DiVirgilio similarly averred that in instances where a Travelers insured is also insured by one or more other carriers, the expense of staff counsel is allocated between Travelers and those insurers. DiVirgilio explained the hourly rate for Travelers' staff counsel was based on "an estimate of the actual cost of such staff counsel, including overhead" and this was the rate other carriers were charged when fees were allocated; that Travelers did not "markup" the cost of its staff

counsel and made no profit from its use of their services. He asserted Travelers *"under-recovered"* for its staff counsel expenses in 1998 and 1999.

Gafcon has not presented evidence demonstrating that Travelers' sharing of Ponsor's costs with other insurers constitutes the sharing of legal fees as opposed to simply contribution for the insurers' respective defense cost obligations.[13] The only conduct Travelers is engaged in is collecting reimbursement for Ponsor's actual costs to Travelers, including overhead, from other responsible insurers. We disagree with Gafcon's argument that Travelers' receipt of those monies constitutes its receipt of "part of the consideration paid to the member" within the meaning of rule 1-600 of the Rules of Professional Conduct. That Ponsor acts as a conduit in collecting and forwarding the other insurers' portion of its expenses does not convert those monies into legal fees, as opposed to Travelers' costs, the sharing of which Gafcon concedes is authorized under Rules of Professional Conduct, rule 3-310(F).[14]

---

[13]"In the context of insurance law, the doctrine of equitable contribution may be simply stated. '[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers . . . .' " (*American Continental Ins. Co. v. American Casualty Co.* (2001) 86 Cal.App.4th 929, 936-937 [103 Cal.Rptr.2d 632], quoting *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1289 [77 Cal.Rptr.2d 296].) While we have found no California decision addressing the issue, the question of whether co-insurers' sharing of in-house counsel's defense costs violates prohibitions against fee splitting was addressed with little analysis by a New York appellate court in *Travelers Ins. Co. v. Comrs. of the State Ins. Fund* (1996) 227 A.D.2d 208, 209 [642 N.Y.S.2d 867, 868-869]. There, Travelers and State Insurance Fund were co-insurers of a corporation named as a defendant in a personal injury lawsuit, and State Insurance Fund acknowledged its obligation to defend the insured and pay one-half the legal expenses. (*Id.* at p. 209 [642 N.Y.S.2d at pp. 868-869].) State Insurance Fund refused to pay its share after learning Travelers used in-house counsel on the matter. (*Ibid.*) The court found payment to Travelers would not constitute the unauthorized practice of law or fee splitting, reasoning that Travelers was "seeking contribution from a co-insurer for documented legal defense costs as required by New York law [citation], an obligation that the defendant has, at all times, acknowledged." (*Id.* at p. 210 [642 N.Y.S.2d at pp. 869].)

[14]Rules of Professional Conduct, rule 3-310(F) provides: "A member shall not accept compensation for representing a client from one other than the client unless: [¶] (1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and [¶] (2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and [¶] (3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if: [¶] (a) such nondisclosure is otherwise authorized by law; or [¶] (b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public." The discussion section to rule 3-310(F) states: "Paragraph (F) is not intended to abrogate existing relationships between insurers and insureds whereby the insurer has the contractual right to unilaterally select counsel for the insured, where there is no conflict of interest." (Discussion, 23 pt. 3 West's Ann. Codes,

Moreover, there is no evidence the sharing of Ponsor's expenses in this case offends the policies underlying the rules against improper fee splitting. (See, e.g., *Emmons, Williams, Mires & Leech v. State Bar* (1970) 6 Cal.App.3d 565, 573 [86 Cal.Rptr. 367] [listing the dangers of fee splitting prohibited by Rules of Prof. Conduct, former rule 3 and noting the rule seeks to bar both solicitation and the presence of a party demanding allegiance the lawyer owes his client].) One of those policies is to avoid instances of control over litigation by a layperson more interested in his or her own profit than the client's fate. (See *Gassman v. State Bar* (1976) 18 Cal.3d 125, 131 [132 Cal.Rptr. 675, 553 P.2d 1147]; *In re Arnoff* (1978) 22 Cal.3d 740, 748, fn. 4 [150 Cal.Rptr. 479, 586 P.2d 960]; *Utz v. State Bar* (1942) 21 Cal.2d 100, 108 [130 P.2d 377] [rules against fee splitting prohibit arrangements where attorneys accept employment solicited by a layperson intermediary who has entered into an agreement with an injured person having a legal claim and where attorney and solicitor share on a contingent basis in the proceeds of the attorney's employment].) Another is to avoid facilitating a layperson intermediary's tendency to select attorneys who will compensate him and not the most competent attorney for the client. (See *Linnick v. State Bar* (1964) 62 Cal.2d 17, 21 [41 Cal.Rptr. 1, 396 P.2d 33].) As Gafcon acknowledges, these policies are concerned with ensuring the best interests of the client remain paramount.

We have already concluded Gafcon has not shown Travelers exerted any influence or control over Ponsor's professional judgment or advice during its brief representation, and, as we explain more fully below (pt. III.D, *post*), Gafcon has not rebutted Travelers' showing it did not profit from its use of Ponsor's services in this case. The absence of economic benefit to Travelers in recovering Ponsor's expenses in particular compels us to conclude it did not engage in fee splitting. It is now settled that a corporation may recover fees incurred by its in-house counsel. In *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, the court held a corporation may recover fees for attorneys within its legal department under Civil Code section 1717 under prevailing market rates for attorney services. (*PLCM Group, Inc. v. Drexler, supra,* at pp. 1093-1094, relying in part on *Garfield Bank v. Folb* (1994) 25 Cal.App.4th 1804 [31 Cal.Rptr.2d 239], disapproved on other grounds in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].) In a concurring and dissenting opinion, Justice Chin urged the corporation's fee recovery be limited to actual costs including overhead to avoid permitting a corporation to profit from its legal department, which would implicate the proscription against fee splitting. (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1106 (conc. & dis. opn. of Chin, J.).) He pointed

Rules, *supra*, foll. rule 3-310, pp. 372-373.) Gafcon does not contend any of the other insurers interfered with Ponsor's independence of professional judgment in this case.

out that several state and federal courts have held a market rate fee award implicates these proscriptions to the extent it enables a corporation to profit from its legal department. (*Ibid.*) As stated, Travelers' recovery from other insurers is limited to actual cost plus overhead; indeed it recovered less than Ponsor's actual costs to Travelers in 1998 and 1999. Its arrangement does not implicate the concerns over unethical fee splitting raised by Justice Chin.

Emphasizing that we limit our consideration of the question to the facts presented here, we conclude Gafcon's evidence did not raise a triable issue of fact regarding any possibility of fee splitting between Travelers and Ponsor in connection with Ponsor's work in the Association's action. Accordingly, Gafcon is not entitled to its sought-after judicial declaration on this point.

## C. Conflict of Interest Triggering Travelers' Duty to Pay for Independent Counsel

Gafcon's fourth cause of action sought a declaration as to whether the facts and claims within the underlying lawsuit presented a conflict of interest triggering Travelers' obligation to pay for independent *Cumis* counsel. Gafcon contends it presented evidence raising a triable issue of fact that Ponsor at the outset operated under such a conflict in its dual representation of both Travelers and Gafcon in the Association's lawsuit. We do not reach Gafcon's contention because we conclude Travelers did not conclusively establish the absence of a conflict sufficient to support summary judgment in its favor.

Our analysis of an insurer's duty to pay for independent counsel begins with *Cumis, supra,* 162 Cal.App.3d 358. In *Cumis,* this court held, "[w]here there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." (*Id.* at p. 375.) There, the underlying action included claims for tortious wrongful discharge and intentional infliction of emotional distress. (*Id.* at p. 361.) The insurer provided its own counsel to defend the insured, but reserved its rights to disclaim coverage for willful misconduct and denied any coverage for punitive damages. (*Id.* at p. 362.) Noting it was uncontested that the basis for the insured's liability "might rest on conduct excluded by the terms of the insurance policy" and that the insurer's own counsel were privy to investigation and client communication that could provide information directly relating to the coverage issue, we held a conflict of interest arises "once the insurer takes the view a coverage issue is present." We explained: "In the usual tripartite relationship existing

between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same. A different situation is presented, however, when some or all of the allegations in the complaint do not fall within the scope of coverage under the policy. In such a case, the standard practice of an insurer is to defend under a reservation of rights where the insurer promises to defend but states it may not indemnify the insured if liability is found. In this situation, there may be little commonality of interest. Opposing poles of interest are represented on the one hand in the insurer's desire to establish in the third party suit the insured's 'liability rested on intentional conduct' [citation], and thus no coverage under the policy, and on the other hand in the insured's desire to 'obtain a ruling . . . such liability emanated from the nonintentional conduct within his insurance coverage' [citation]. . . . Although issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status [citation]." (*Id.* at pp. 364-365, fns. omitted.) More generally, *Cumis* observed that an attorney having such dual agency status is subject to the rule that a " '[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other.' " (*Cumis, supra,* 162 Cal.App.3d at p. 365, fn. 4, quoting *Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152 Cal.Rptr. 776].)

In 1987, the Legislature enacted Civil Code section 2860, which codified the right to independent or *Cumis* counsel but "clarifi[ed]"and "limit[ed]" *Cumis*'s stated rights and responsibilities of insurer and insured. (*Buss v. Superior Court, supra,* 16 Cal.4th at p. 59; *James 3 Corp. v. Truck Ins. Exhange, supra,* 91 Cal.App.4th at p. 1101.) Under the statute, an insurer having a duty to defend its insured must provide its insured independent counsel when a "conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured" unless "at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel." (Civ. Code, § 2860, subd. (a).) Subdivision (b) of the statute further explains when such a conflict might arise. It provides: "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an

insured is sued for an amount in excess of the insurance policy limits." Thus, under the express language of the statute, the fact punitive damages are alleged does not itself create a conflict, nor does a conflict exist solely because the insured is sued for an amount in excess of insurance policy limits. (*Blanchard, supra*, 2 Cal.App.4th at p. 350, citing Civ. Code, § 2860 and *Foremost Ins. Co. v. Wilks* (1988) 206 Cal.App.3d 251, 261 [253 Cal.Rptr. 596].)

■ But Civil Code section 2860 does not purport to address any and all conflicts that might arise: "It does not clearly state when the right to independent counsel vests." (*James 3 Corp. v. Truck Ins. Exchange, supra*, 91 Cal.App.4th at p. 1101.) Civil Code section 2860, subdivision (b) is "an example of a conflict of interest which may require appointment of independent counsel. It is not, however, the only circumstance in which *Cumis* counsel may be required. The language of Civil Code section 2860 'does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section.' [Citation.]" (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1395-1396 [25 Cal.Rptr.2d 242].)

Gafcon focuses on Travelers' reservation of rights to deny coverage and seek reimbursement for noncovered claims. ■ Consistent with section 2860, subdivision (b), courts of appeal, including ours, repeatedly recognize a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights. There must also be evidence that "the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim." (*James 3 Corp. v. Truck Ins. Exchange, supra*, 91 Cal.App.4th at p. 1102; see *Novak v. Low, Ball & Lynch* (1999) 77 Cal.App.4th 278, 281 [91 Cal.Rptr.2d 453]; *Dynamic Concepts, Inc. v. Truck Insurance Exchange* (1998) 61 Cal.App.4th 999, 1006 [71 Cal.Rptr.2d 882]; *Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 994 [59 Cal.Rptr.2d 529]; *Blanchard, supra*, 2 Cal.App.4th at p. 350; *Golden Eagle Ins. Co. v. Foremost Ins. Co., supra*, 20 Cal.App.4th at pp. 1394-1395; *State Farm Fire & Casualty Co. v. Superior Court* (1989) 216 Cal.App.3d 1222 [265 Cal.Rptr. 372]; *Native Sun Investment Group v. Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1277 [235 Cal.Rptr. 34].) In *State Farm Fire & Casualty Co. v. Superior Court*, a panel of this court observed: "*Cumis* can be read to suggest that a conflict arises *whenever* the insurer asserts a reservation of its right to assert noncoverage, while still providing a defense to the liability action. [Citation.] This interpretation of *Cumis* would be erroneous, as pointed out in *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]. It is only when

the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise." (*State Farm Fire & Casualty Co. v. Superior Court, supra,* at p. 1226, fn. 3; see also *Native Sun Investment Group v. Ticor Title Ins. Co., supra,* 189 Cal.App.3d at p. 1277, quoting *McGee v. Superior Court, supra,* 176 Cal.App.3d at p. 226 [the " 'crucial fact' " in *Cumis* was that the insurer's reservation of rights " 'was based on the nature of the insured's conduct, which as developed at trial [of the third party claim] would affect the determination as to coverage' "].) In the event of the insurer's reservation of rights, the insured's right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." (*Blanchard,* at p. 350.)

Under these authorities, there is no entitlement to independent counsel where the coverage issue is " 'independent of, or extrinsic to, the issues in the underlying action [citations].' " (*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 130-131 [93 Cal.Rptr.2d 534], citing *Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th at p. 1006.) Stated otherwise, "where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." (*Foremost Ins. Co. v. Wilks, supra,* 206 Cal.App.3d at p. 261.) Thus, in *Blanchard,* where homeowners sued a general contractor alleging various construction defects, and the insurer agreed to defend the contractor under a reservation of rights involving only potential noncoverage of certain damages, the Court of Appeal concluded there was no right to independent *Cumis* counsel as a matter of law. There, under the insured's policy, "[t]he contractor [bore] the risk of repairing or replacing faulty workmanship, while the insurer [bore] the risk of damage to the property of others. [Citation.] If, for instance, faulty workmanship in the framing of drywall led to rainwater leaking in and damaging a homeowner's furnishings, [the contractor] would be indemnified for the damage to the furnishings, but not for the cost of repairing or replacing the faulty workmanship. [Citation.]" (*Blanchard, supra,* 2 Cal.App.4th at pp. 348-349.) The insured did not dispute this interpretation of the damages payable under the policy. (*Id.* at p. 349.) But more fatal to its appeal of the jury's verdict in the insurer's favor, it produced no evidence to show in what specific way the defense attorney could have controlled the outcome of the damage issue to appellant's detriment, or had incentive to do so. (*Id.* at p. 350.) It merely referred to "an unspecified *possibility* of a conflict." (*Ibid.*) This was insufficient. Because "[t]he coverage issue involved only damages" and "[i]nsurance counsel had no incentive to attach liability to appellant," the court

concluded the attorneys hired by the insurer faced no conflict, and the trial court should have decided the *Cumis* issue as a matter of law. (*Ibid.*)

▮▮▮▮ Travelers' motion was based on evidence demonstrating that neither von Kaesborg nor any other Ponsor lawyer participated in the determination as to Travelers' reservation of rights, nor bore any responsibility for its coverage determination. Von Kaesborg further averred that Travelers did not interfere with his professional judgment and that he notified Gafcon that he "would not put any interests of Travelers above those of Gafcon." But whether or not counsel participated in the preliminary assessment of coverage is not the sole or determinative test for whether an attorney representing both insurer and insured operates under a conflict of interest. To meet its threshold summary judgment burden, Travelers was required to demonstrate that Gafcon was not entitled to the judicial declaration it sought—that Gafcon could not establish Ponsor was able to control the outcome of coverage to Gafcon's detriment by positions it might take in litigation nor was Ponsor's representation rendered "less effective" by reason of its relationship with Travelers. (§ 437c, subd. (o)(2); see *Aguilar, supra,* 25 Cal.4th at pp. 853-854.) Alternatively, Travelers could have demonstrated, by pointing to Gafcon's deficient discovery responses, that Gafcon did not possess and could not reasonably obtain needed evidence to show the existence of an actual conflict of interest. (*Aguilar, supra,* 25 Cal.4th at pp. 853-854.)

Although Travelers' evidence was directed at the more general question of whether Ponsor's representation of Gafcon was rendered less effective by Ponsor's status as staff counsel, it did not address Ponsor's ability to affect the question of coverage by its defense of the underlying action. It was not sufficient to show Ponsor & Associates' lawyers were not influenced or controlled by Travelers and had no *intent* to affect the outcome of coverage. The statement in *Cumis* is still apt: "No matter how honest the intentions, counsel cannot discharge inconsistent duties." (*Cumis, supra,* 162 Cal.App.3d at p. 366.) Travelers was required to show Ponsor & Associates' lawyers *could not* impact coverage by the manner in which they defended the case. In order to meet its burden, Travelers was required to make some showing as to how the issues presented by Travelers' reservation of rights differed from or were extrinsic to those issues that were developing or had developed in the Association's action. The only evidence in the record on Travelers' motion, however, was the Association's complaint and Travelers' policy exclusion for damages based upon errors or deficiencies in advice or consultation given by Gafcon. Travelers failed to establish, by attorney declaration or other admissible evidence, that the Association's claims against Gafcon were not based upon conduct by Gafcon that would impact the ultimate coverage determination. Absent such a showing, Travelers did

not carry its burden on summary judgment to show Gafcon could not establish a conflict of interest requiring the retention of *Cumis* counsel.

Given our conclusion that the court erred in granting 'summary judgment on Gafcon's fourth cause of action for declaratory relief, we need not address Gafcon's claim with respect to the trial court's refusal to take judicial notice of the unpublished decision of Division Three of the Court of Appeal, Second Appellate District in *Pacific Greystone Corp. v. Aetna Insurance Co.* (Apr. 26, 2000, B124297).

## D. *Unfair Competition Cause of Action*

 Gafcon contends the court erred in granting summary judgment on its sixth cause of action under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). It asserts Travelers failed to address that cause of action in its motion and the court did not address it in its order. The contention is without merit.

Contrary to Gafcon's assertions, Travelers indeed sought an adjudication of Gafcon's sixth cause of action by including it in its separate statement of undisputed facts. Moreover, as Travelers points out, Gafcon's unfair business practices cause of action was not based on the theory that Travelers "overstate[s] its cost of defense when it reports the amount it assesses its insureds (rather than the actual cost) to the Department of Insurance. . . ." Although Gafcon argued in opposition to Travelers' motion that Travelers "may" be obtaining its rate approval from insurance regulators based upon false expense information and overstates these costs, no such allegations appear in its second amended complaint. Travelers was not bound to address unpleaded issues in its motion for summary judgment. (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 [42 Cal.Rptr.2d 669] [summary judgment cannot be denied on a ground not raised by the pleadings]; see also *Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1699 [39 Cal.Rptr.2d 65].) While Gafcon argues the trial court should not have limited the scope of summary judgment based on perceived deficiency in the pleadings, it does not point out where in the record it requested leave to amend its pleading. Absent such a request, we do not fault the trial court for limiting its ruling to those theories presently alleged in Gafcon's second amended complaint. (*Bostrom v. County of San Bernardino*, at p. 1664.)

For the first time in its reply brief, Gafcon points out its unfair competition cause of action is based upon allegations that "insurance companies profit directly and indirectly by using employee attorneys to represent their

insured, which is illegal, unethical, [and] violates the California Rules of Professional Conduct and the State Bar Act . . . ." ▮▮▮ ▬ ▬ Presuming Gafcon's allegations as to unethical or illegal profits sufficiently stated an unfair or illegal practice under the broad scope of the UCL (see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181 [83 Cal.Rptr.2d 548, 973 P.2d 527]),[15] Travelers' threshold summary judgment burden was to demonstrate Gafcon could not establish one or more elements of such a cause of action based upon those allegations. (§ 437c, subd. (o)(2).) ▮▮▮ Travelers could negate Gafcon's claim of an unfair or illegal profit in at least two ways: it could either (1) present admissible evidence demonstrating it did not obtain any profit derived from its use of employee attorneys such as Ponsor, thus eliminating the court's need to determine whether such profit was illegal or unfair; or (2) present argument that, assuming it derived a profit from its use of employed counsel to represent its insureds, such a profit is not illegal or unfair within the meaning of the UCL as a matter of law. (See *Aguilar, supra,* 25 Cal.4th at pp. 853-854.) Travelers could have also demonstrated through admissible evidence that Gafcon did not possess, and could not reasonably obtain, needed evidence in support of its cause of action. (*Id.,* at pp. 853-854, 855.)

In its moving papers, Travelers asserted it had complied with its obligations under the Civil Code with respect to independent *Cumis* counsel, and had not engaged in any unlawful, unfair, or fraudulent business act or practice, or deceptive, untrue or misleading advertising. It identified the

---

[15]Under the UCL, "[a]n unlawful business practice or act is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969 [69 Cal.Rptr.2d 623], citing *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].) Virtually any law can serve as the predicate for a Business and Professions Code section 17200 action; it may be " ' "civil or criminal, federal, state or municipal, statutory, regulatory, or court-made. [Citation.] It is not necessary that the predicate law provide for private civil enforcement. [Citation.] . . . [Business and Professions Code s]ection 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." ' [Citations.]" (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 880 [85 Cal.Rptr.2d 301].) Moreover, "[d]etermination of whether a business practice or act is 'unfair' within the meaning of [the UCL] entails examination of the impact of the practice or act on its victim, ' ". . . balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." [Citation.]' [Citation.] In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices . . . .' [Citation.]" (*Klein v. Earth Elements, Inc., supra,* 59 Cal.App.4th at p. 970.) This court has held that " 'an "unfair" business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' [Citation.]" (*South Bay Chevrolet v. General Motors Acceptance Corp.,* at pp. 886-887 [acknowledging the Supreme Court's disapproval of this language in the context of a competitor's lawsuit but noting the Supreme Court's discussion did not relate to "actions by consumers"].)

same evidence demonstrating its lack of control or interference in Ponsor's defense, including the statement in von Kaesborg's declaration averring, "At no time do we split fees with Travelers." Such evidence was by itself insufficient to negate any possible unfair competition claim based upon Travelers' profit. However, in reply to Gafcon's opposition papers, Travelers presented an additional declaration by DiVirglio, Travelers' deputy general counsel, in which he averred: "Travelers makes no profit from its use of staff counsel."

DiVirglio's declaration, while terse, was sufficient to meet Travelers' threshold summary judgment burden. At no time during arguments on the matter did Gafcon object to the foundation or competency of this particular evidence, nor did it object to the inclusion of this new evidence included in Travelers' reply papers. Absent any objection to the inclusion of new evidence in Travelers' reply brief, the court was entitled to consider the evidence as within the record before it. (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [13 Cal.Rptr.2d 811]; *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1084 [1 Cal.Rptr.2d 215].) On appeal, Gafcon has not disputed the accuracy of that statement, nor has it presented evidence raising an inference to contradict it. In view of Gafcon's failure to challenge this particular evidence either before the trial court or before us on appeal, we conclude the court properly granted summary judgment on this claim.

## IV. *Request for Additional Discovery*

Gafcon challenges the trial court's denial of its motions to compel discovery on matters it contends were necessary to establish certain facts, including the existence of restrictions Travelers imposed upon its staff counsel and Travelers' reporting of false and misleading information to the Department of Insurance. We do not address this contention. For Gafcon to properly challenge the court's discovery rulings as an abuse of discretion, it must provide this court, at a minimum, with a record and argument as to the scope of discovery it sought, its relevance to the issues in the underlying lawsuit, and the basis for the trial court's ruling. Absent such matters before us, the record is simply inadequate to assess whether the court's rulings on discovery were an abuse of discretion or reach any other conclusion on the propriety of the trial court's decisions.

## DISPOSITION

The judgment with respect to Ponsor & Associates and von Kaesborg is affirmed. The judgment with respect to Travelers is reversed. On remand,

the trial court is directed to deny Travelers' motion for summary adjudication as to Gafcon's fourth cause of action for declaratory relief and enter summary adjudication of Travelers' remaining causes of action. The parties are to bear their own costs on appeal.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied June 26, 2002, and appellant's petition for review by the Supreme Court was denied September 11, 2002.