Filed 1/22/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| CENTEX HOMES et al., | C081266 |
| Cross-complainants and Appellants, | (Super. Ct. No. SCV0031148) |
| v. | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Judge. Affirmed.

Payne & Fears, J. Kelby Van Patten, Jared De Jong; Kendall Brill & Kelly, Laura W. Brill and Nicholas F. Daum for Cross-complainants and Appellants.

The Aguilera Law Group, A. Eric Aguilera, Raymond E. Brown and Lindsee B. Falcone for Cross-defendant and Respondent.

1

Cross-complainants and appellants Centex Homes and Centex Real Estate Corporation (Centex) and cross-defendant and respondent St. Paul Fire and Marine Insurance Company (St. Paul) have a history of insurance coverage disputes. This particular dispute arises out of construction defect litigation between certain Rocklin homeowners and Centex, the developer of their homes. St. Paul was an insurer for subcontractor Ad Land Venture (Ad Land), and agreed to defend Centex as an additional insured subject to a reservation of rights. Centex filed a cross-complaint against its subcontractors and St. Paul that sought, as the seventh cause of action, a declaration that Centex was entitled to independent counsel under Civil Code section 2860[1] because St. Paul's reservation of rights created significant conflicts of interest.[2]

Centex appeals from a final judgment after the trial court granted St. Paul's motion for summary adjudication of Centex's seventh cause of action. Centex argues any possible or potential conflict is legally sufficient to require St. Paul to provide independent counsel. We disagree. Alternatively, Centex contends independent counsel was required because counsel appointed by St. Paul could influence the outcome of the coverage dispute and St. Paul controlled both sides of the litigation. Because Centex has failed to establish a triable issue of material fact regarding these assertions, we affirm the judgment.

## I. BACKGROUND

The underlying action was initiated by homeowners from two residential developments in Rocklin against Centex for alleged defects to their homes. Centex did

---

[1] Undesignated statutory references are to the Civil Code.

[2] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364 (*Cumis*) recognized the insurer's duty to appoint independent counsel for its insured under certain circumstances. Section 2860 " 'clarifies and limits' " the *Cumis* decision. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 59.)

2

not directly perform any of the construction on these homes. On March 30, 2012, Centex tendered its defense of the action to St. Paul as an additional insured pursuant to Ad Land's policy. St. Paul agreed to defend Centex subject to a reservation of rights. The reservation of rights reserved St. Paul's right to deny indemnity to Centex for any claims by the homeowners not covered by the policy, including claims of damage to Ad Land's work and damage caused by the work of other subcontractors not insured by St. Paul. St. Paul also reserved its right to reimbursement of costs incurred defending uncovered claims. St. Paul appointed attorney David Lee to represent Centex and defend against the homeowners' claims.

On July 12, 2012, Centex filed a cross-complaint against subcontractors including Ad Land alleging breaches of written, oral and implied contracts to indemnify, defend and obtain insurance, as well as causes of action for equitable indemnity, contribution and repayment, and declaratory relief. The cross-complaint included a seventh cause of action for declaratory relief against St. Paul that sought a declaration that Centex was entitled to independent counsel under section 2860 because St. Paul's reservation of rights created significant conflicts of interest.

St. Paul moved for summary adjudication of Centex's seventh cause of action. In support of its motion, St. Paul introduced evidence that Lee only represents Centex with respect to its defense of the complaint, and does not represent Centex, Ad Land or St. Paul in connection with the cross-complaint. Lee also does not represent St. Paul regarding its separate actions against Centex or claims for contribution. St. Paul relied on testimony from Lee's deposition explaining that St. Paul did not place any limitations on his representation of Centex and never dictated or controlled what he could do regarding the prosecution of Centex's cross-complaints. Additionally, St. Paul never asked Lee to settle claims against the named insured while he represented Centex.

The trial court granted St. Paul's motion for summary adjudication. The court held that St. Paul met its initial burden by establishing that its reservation of rights did not

create a conflict of interest and did not affect coverage issues that could be controlled by Lee. Additionally, St. Paul sufficiently established that Lee does not have a conflict of interest. "St. Paul has also established that the other lawsuits and claims for reimbursement, subrogation, and contribution do not create a conflict of interest. St. Paul has retained separate counsel, The Aguilera Law Group, to pursue its claims against Centex. [Citation.] Mr. Lee . . . does not represent St. Paul."

The trial court determined Centex and Ad Land had similar interests to limit liability. "St. Paul has successfully negated the existence of a conflict between Mr. Lee and Centex that would put 'appointed counsel in the position of having to choose which master to serve.' "

Conversely, the trial court held Centex did not establish a triable issue of material fact. "The evidence clearly shows a conflict between St. Paul and Centex. It does not extend, however, to include Mr. Lee so as to invoke a triable issue regarding the appointment of independent counsel." In light of its decision to grant St. Paul's motion for summary adjudication, the trial court explained Centex's own motion for summary adjudication on its seventh cause of action was "dropped as moot."

A final judgment on the entire action was entered on November 18, 2015,[3] and Centex timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

We begin by summarizing several principles that govern the grant and review of summary judgment motions under section 437c of the Code of Civil Procedure. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Merrill v. Navegar, Inc.*

---

[3] All other claims in the underlying action and cross-action were settled or dismissed.

4

(2001) 26 Cal.4th 465, 476; see also Code Civ. Proc., § 437c, subd. (c).) A defendant or cross-defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see also Code Civ. Proc., § 437c, subd. (p)(2).) The cross-defendant "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra*, at p. 850.) Once the cross-defendant meets its initial burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Ibid.*) "The plaintiff or cross-complainant shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

"Although we independently assess the grant of summary judgment, our inquiry is subject to two constraints. Under the summary judgment statute, we examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have been appropriately sustained. [Citations.] . . . [¶] Furthermore, our review is governed by a fundamental principle of appellate procedure, namely, that ' "[a] judgment or order of the lower court is presumed correct," ' and thus, ' "error must be affirmatively shown." ' [Citations.] Under this principle, the [appellants] bear the burden of establishing error on appeal, even though [the respondent] had the burden of proving its right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised in the [appellants'] briefs." (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 644-645.)

Centex's appellate briefing cites to evidence to which the trial court sustained objections. Centex neither acknowledges these evidentiary rulings nor argues they were

improper. "Because the [appellants] do not challenge these rulings on appeal, our review is limited to the evidence considered by the trial court." (*Paslay v. State Farm General Ins. Co.*, *supra*, 248 Cal.App.4th at p. 645.)

Centex also fails to support much of its briefing with necessary citations to authority or the record. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court' "].) With respect to the record, in particular, " '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' [Citations.] It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) With these principles in mind, we will address the merits of Centex's appeal.

B.      *The Right to Independent Counsel*

"Generally, an insurer owing a duty to defend an insured, arising because there exists a potential for liability under the policy, 'has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation.' [Citations.] The insurer typically hires defense counsel who represents the interests of both the insurer and the insured." (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1468.)

"[S]ection 2860 and California case law provide Centex, as an insured, with the right to obtain independent counsel paid for by [St. Paul], as Centex's insurer, whenever their competing interests create an ethical conflict for counsel." (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 30 (*Centex I*).) Section 2860 provides in relevant part:

6

"(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. . . .

"(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."

Under section 2860, subdivision (b) and the relevant case law, "not every reservation of rights entitles an insured to select *Cumis* counsel." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1006.) Whether independent counsel is required "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." (*Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350.) "There must . . . be evidence that 'the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim.' " (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1421.) " 'It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.' " (*Id.* at pp. 1421-1422.)

California law is settled that "there is no entitlement to independent counsel where the coverage issue is ' "independent of, or extrinsic to, the issues in the underlying action [citations]." ' [Citation.] Stated otherwise, 'where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the

underlying action, there is no conflict of interest requiring independent counsel.' " (*Gafcon, Inc. v. Ponsor & Associates, supra,* 98 Cal.App.4th at p. 1422.)

"A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange*, *supra,* 61 Cal.App.4th at p. 1007.) A case by case analysis is required: "The potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured. As the court noted in *Native Sun Investment Group v. Ticor Title Ins. Co.*[ (1987)] 189 Cal.App.3d [1265,] 1277, insurer-appointed defense counsel may obviate any *potential* conflict involving uncovered claims by ' "proceed[ing] diligently to litigate the matters that he was charged with on behalf of his client [the insured]." ' " (*Id.* at pp. 1007-1008.)

### 1. Any Possible Conflict Insufficient

Despite the well-established standards we have set forth above, Centex argues section 2860 codifies the right to independent counsel whenever " 'a possible conflict may arise,' " and attempts to disregard the applicable case law as consisting of "poorly-crafted language" that was not properly considered. We are not persuaded. *Dynamic Concepts, Inc. v. Truck Insurance Exchange, supra,* 61 Cal.App.4th 999, considered the threshold for a conflict necessitating independent counsel and cited authority for its conclusion that actual conflict is required while a potential conflict is insufficient. (*Id.* at pp. 1006-1007.) The case law Centex asks us to disregard is both considered and settled. Additionally, the reference in section 2860 to "possible conflict" is part of the statute's explanation that an insurer does not need to provide independent counsel after "a *conflict* of interest arises" if "at the time the insured is informed that a *possible conflict* may arise or does exist, the insured expressly waives, in writing, the right to independent counsel."

8

(§ 2860, subd. (a), italics added.)  Thus, the statute specifies there is a right to independent counsel when a conflict arises but reflects that this conflict may be waived either at the time it arose or before, when it was merely a possible conflict.  The fact that an insured can waive a conflict when it is merely potential is separate from the articulation of when the right to independent counsel arises.  With respect to when independent counsel is required, the statute states there must be a "conflict" and not "potential conflict."  Thus, the language of section 2860 lends no support to Centex's assertion that a mere possible conflict is always sufficient to necessitate independent counsel.

To the extent *Cumis, supra,* 162 Cal.App.3d at pp. 371, fn. 7, 375 suggests "potential" conflicts or whenever the insurer has reserved its rights to deny coverage are sufficient to require appointment of independent counsel, we emphasize that section 2860 " 'clarifies and limits' " the *Cumis* decision.  (*Buss v. Superior Court*, *supra*, 16 Cal.4th at p. 59; see also *Gafcon, Inc. v. Ponsor & Associates, supra,* 98 Cal.App.4th at p. 1421 [explaining that interpreting *Cumis* to suggest a conflict arises whenever the insurer asserts a reservation of rights is erroneous].)  More critically, this case does not turn on the abstraction of whether a conflict must be "actual" or "potential."  Rather, section 2860 addresses the situation framed by this case specifically.  It provides that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." (§ 2860, subd. (b).)  In this case, Centex's claim for declaratory relief is based on St. Paul's reservation of rights letter.  As such, Centex's reliance on *Cumis* itself is misplaced because the type of putative conflict asserted here is addressed by section 2860.

9

## 2. *Rule 3-310(C)(1) of the Rules of Professional Conduct Is Inapplicable*

Centex asserts rule 3-310(C)(1) of the Rules of Professional Conduct requires the appointment of independent counsel in the event of any potential conflict.[4] Not so. Rule 3-310(C) provides that an attorney "shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." In *Cumis*, the court of appeal explained that "[t]he lawyer's duties in the conflict of interest situation presented here are correlative to the insurer's contractual duty to pay for an independent lawyer when it reserves its rights to deny coverage under the policy." (*Cumis, supra,* 162 Cal. App.3d at pp. 373-374.) The court then cited former rule 5-102(B), which stated: " 'A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned.' " (*Cumis, supra,* at p. 374.) Rule 3-310(C) post-dates *Cumis*. Moreover, it is not clear that the prohibition in rule 3-310(C)(1) on accepting representation of more than one client in a manner where their interests potentially conflict applies to the insurer-insured relationship, particularly here where no limitations were placed on Lee's representation of Centex.

While we generally conceptualize defense counsel as representing the interests of both the insurer and the insured (*Long v. Century Indemnity Co., supra,* 163 Cal.App.4th at p. 1468), they are not necessarily both clients "in a matter" as contemplated by rule 3-310(C)(1). The Discussion to the rule explains "[s]ubparagraph (C)(3) is intended to

_____

[4] Undesignated rule references are to the Rules of Professional Conduct.

apply to representations of clients in both litigation and transactional matters. [¶] In *State Farm Mutual Automobile Insurance Company v. Federal Insurance Company* (1999) 72 Cal.App.4th 1422 [86 Cal.Rptr.2d 20], the court held that subparagraph (C)(3) was violated when a member, retained by an insurer to defend one suit, and while that suit was still pending, filed a direct action against the same insurer in an unrelated action without securing the insurer's consent. Notwithstanding *State Farm*, subparagraph (C)(3) is not intended to apply with respect to the relationship between an insurer and a member when, in each matter, the insurer's interest is only as an indemnity provider and *not as a direct party to the action*." (Discussion foll. rule 3-310, italics added.) It follows that subparagraph (C)(1)—which differs from subparagraph (C)(3) by requiring the two clients be in the same, as opposed to merely simultaneous, matters—would not apply either when an insurer's interest is only as an indemnity provider.[5]

Before this clarification regarding rule 3-310(C)(3) was added, Formal Opinion No. 1995-139 of the California State Bar Standing Committee on Professional Responsibility and Conduct (hereinafter State Bar Opinion 1995-139) addressed the issue of to whom an attorney owes duties when he or she acts as insurance defense counsel and is hired by an insurer to represent the insured.[6] The Committee noted that rule 3-310 "may seem at odds with some case law dicta" assuming no separate written disclosure to the insurer and insured other than the insurance contract itself. (State Bar Opinion No. 1995-139, *supra,* at p. *3.) The Committee explained that "while insurer is indeed a

---

[5] Rule 3-310(F) applies to situations where an attorney accepts compensation for representing a client from someone other than the client. The Discussion to the rule cites *Cumis* and explains that "Paragraph (F) is not intended to abrogate existing relationships between insurers and insureds whereby the insurer has the contractual right to unilaterally select counsel for the insured, where there is no conflict of interest."

[6] "We are not bound by an ethics opinion." (*Gafcon, Inc. v. Ponsor & Associates, supra*, 98 Cal.App.4th at p. 1414.)

11

client in some respects—the ongoing relationship with the member, the payment of fees, etc.—it is a client whose rights under case law are clearly limited." (*Id*. at p. \*4) "Where a member complies with the mandates of this opinion to protect the interests of the insured, his or her additional compliance with rule 3-310 is not necessary for two reasons: First, given the unusual, perhaps unique, interrelationship of insurer, insured and counsel, the contract of insurance itself, drafted by the insurer for its own benefit, provides more than adequate disclosure under rule 3-310(B)(3) to the insurer. Second, the 'potential conflict' trigger of rule 3-310(C)(1) is never pulled because, as seen *infra*, when such a conflict manifests itself, case law resolves any potential conflict in that matter by mandating a resolution in favor of the represented insured and against the non-represented, non-party insurer. Put another way, case law instructs that ultimately, there can be no conflict between insurer and insured since, as discussed *infra*, the insured will always prevail where an issue is created between them. [Citation.] Thus, the notice to and waiver by the insured is superfluous." (*Id*. at pp. \*4-5, fn. omitted.) Centex suggests we ignore this "background information." Instead, we conclude it is consistent with our understanding that rule 3-310(C)(1) does not alter the settled law regarding when independent counsel is required.

Even if rule 3-310(C)(1) did technically apply to insurer-insured relationships, Centex acknowledges it is only triggered when there is a reasonable likelihood an actual conflict will arise. (*In re Celine R.* (2003) 31 Cal.4th 45, 57-58; *Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 779.) Moreover, subparagraph (C)(1) of rule 3-310 refers only to the accepting of appointment as counsel, and not also to the continued representation of a client such as in subparagraph (C)(2). At the time Lee was appointed, Centex had not yet filed its cross-complaint. And the parties agree that, as the developer, Centex was strictly liable for construction defects. Centex could not have escaped liability by arguing the damages were proximately caused by the negligence of a subcontractor. (*Acosta v. Glenfed Development Corp.* (2005) 128

12

Cal.App.4th 1278, 1297-1298.) Centex's arguments regarding conflicts center around its cross-complaint and, as we discuss below, are otherwise not sufficiently supported by citations to the record. As such, we cannot conclude that at the time of Lee's appointment it was reasonably likely an actual conflict would arise between Centex and St. John. Therefore, Centex's arguments fair no better under rule 3-310(C)(1) than they do under the case law interpreting section 2860.

### 3. *No Control Over Outcome of Coverage Issue*

We turn now to the question of whether Centex was entitled to independent counsel under section 2860 and the relevant case law. Again, "a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights. There must also be evidence that 'the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim.' " (*Gafcon, Inc. v. Ponsor & Associates, supra,* 98 Cal.App.4th at p. 1421.) As we have also explained, because Centex is strictly liable for construction defects, causation would not necessarily have been litigated in the underlying action. (*Acosta v. Glenfed Development Corp., supra,* 128 Cal.App.4th at pp. 1297-1298.) Centex offers no actual evidence or citations to authority to the contrary. In support of its assertion that Lee could have influenced the outcome of the causation question, Centex provides only citations to its own summary judgment *briefing,*[7] evidence that the trial court deemed inadmissible, evidence that did not fully support Centex's arguments, and the trial court's order. It is Centex's duty as appellant to point us to appropriate authority or evidence, and it has failed to do so. In short, we are left to reach the same conclusion as the trial court—that Centex has failed to establish a triable issue of material fact on the question

---

[7] "This reference obviously is not to admissible evidence in the record that indicates a triable issue of fact exists." (*Guthrey v. State of California, supra,* 63 Cal.App.4th at p. 1115 [appellant cited to briefing in support of motion for summary judgment].)

13

of whether Lee could have controlled the coverage dispute between Centex and St. Paul. (See *Blanchard v. State Farm Fire & Casualty Co., supra*, 2 Cal.App.4th at p. 350 ["Appellant produced no evidence to show in what specific way the defense attorney could have controlled the outcome of the damage issue to appellant's detriment, or had incentive to do so"].)  In another insurance coverage dispute between these parties, a court of appeal held that a demurrer to Centex's cause of action for declaratory relief regarding its right to independent counsel was properly sustained.  (*Centex I, supra,* 237 Cal.App.4th at pp. 27, 32.)  The appellate court explained, "Centex offers a host of allegations about how [St. Paul] will control the litigation without describing how this is occurring in the underlying construction defect litigation.  Centex is alleging conclusions without substance, not facts.  As Gertrude Stein famously said about Oakland, there is no there there."  (*Id.* at pp. 31-32.)  Here too, Centex's unsupported assertions are insufficient.  As the court in *Centex I* observed, while "[St. Paul] and Centex's interests may be slightly different because [St. Paul]'s liability is limited to [Ad Land]'s work and [St. Paul] claims a right to reimbursement against Centex for all defense fees unrelated to property damage caused by [Ad Land]," based on this record we can only conclude that "Centex's liability is derivative and [St. Paul] has the same interest in defending the underlying claim.  These circumstances do not cause a conflict requiring independent counsel."  (*Id.* at p. 32.)

   *4.  St. Paul Did Not Control Both Sides of the Litigation*

   Centex's claim that St. Paul controls both sides of the litigation also fails.  This argument mistakenly seeks to analogize this case to our Supreme Court's decision in *O'Morrow v. Borad* (1946) 27 Cal.2d 794.  In that case, an insurance company insured two drivers involved in a car accident.  (*Id.* at p. 795.)  In the lawsuit between them, each claimed he was entitled to damages because of injury to his person and property from the collision.  (*Id*. at p. 796.)  Our Supreme Court held that, under these circumstances, the insurance company could not control the defenses of the two policyholders, and the

14

driver who retained his own counsel was entitled to reimbursement of his costs of suit and attorneys' fees. (*Id*. at p. 799-800.) The conflict was clear. In this case, however, for the reasons set forth above and because St. Paul did not appoint counsel for Centex with respect to the cross-complaint, St. Paul did not control both sides of litigation. Again, Centex has failed to establish a triable issue of fact as to its claim for declaratory relief.

### III. DISPOSITION

The judgment is affirmed. St. Paul Fire and Marine Insurance Company shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)[8]

/S/

---

RENNER, J.

We concur:

/S/

---

HULL, Acting P. J.

/S/

---

DUARTE, J.

---

[8] Centex filed a motion requesting that we take judicial notice of information regarding a separate lawsuit between the parties. We deferred ruling on the request for judicial notice and now deny it, without reaching the merits, on the ground that it is immaterial to our conclusion on appeal.